UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                    :

THOMAS M. ROLAND III,                       :

                                   Plaintiff,     :

                                                           :          12 Civ. 6331 (JPO)

                     -v-                                     :

                                                           :          OPINION AND ORDER

DANIEL MCMONAGLE, MICHAEL          :
BARKLEY, JUSTIN TAFT, JED SAUL, and  :
MICHAEL WEIR,                                     :

                                  Defendants.  :

------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

       Thomas M. Roland III brings this action pursuant to 42 U.S.C. § 1983 alleging that he was physically assaulted and forcibly medicated in violation of his First, Eighth, and Fourteenth Amendment rights. Roland has moved to amend the complaint to substitute Defendant Correctional Officers ("COs") Michael Weir and Michael Barkley with COs Joseph Horos and Michael McCooey. For the reasons that follow, his motion is granted.

**I.    Background**

       **A.**     **Factual Background**[1]

       Roland is currently incarcerated by the New York Department of Corrections and Community Supervision ("DOCCS") at the Wende Correctional Facility in Alden, New York. This case arises out of events that took place on September 20, 2009, during his incarceration at the Sullivan Correctional Facility in Fallsburg, New York ("Sullivan"). Around 6:45 p.m., Roland was escorted by Sergeant Daniel McMonagle and COs Jed Saul and Justin Taft from his

---

[1] The following facts are drawn from the proposed Second Amended Complaint (Dkt. No. 79, Ex. A) and other submissions made in connection with the instant motion. *See, e.g.*, *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 144 (S.D.N.Y. 2012).

cell to a tier hearing room to provide a urine sample. When he stated that he could not urinate, the officers and a mental health nurse forcibly administered psychotropic medication to assist. After producing a sample, Roland was taken by the three officers, along with two additional COs, to an unmonitored cell where he was beaten, called racial slurs, and mocked for filing grievances.

Four days later, Roland was transferred to the Central New York Psychiatric Center, purportedly in order to cover up the incident. When he arrived, he told staff about the attack and his injuries. On September 28, 2009, Mental Health Chief Susan Smith sent a memorandum to Sullivan Superintendent James Walsh, which spawned an investigation. The officers involved were immediately identified as McMonagle, Saul, Taft, and COs Joseph Horos and Michael McCooey. Each was required to draft a memorandum responding to the allegations. As a result of its investigation, DOCCS concluded that there had been no wrongdoing on the part of the officers and informed Roland of its determination. At no point, however, was Roland told the officers' names.

### B. Procedural Background

Roland initiated an action *pro se* on December 1, 2010, naming as defendants Smith, Walsh, Dr. Donald Sawyer, and several John and Jane Doe officials. *Roland v. Smith*, No. 10 Civ. 9218 (VM) (S.D.N.Y.). On February 22, 2012, Judge Marrero granted Smith, Walsh, and Sawyer's motion to dismiss for failure to state a claim, and dismissed the claims against the unidentified officials for failure to effect service in a timely manner. *Smith*, 907 F. Supp. 2d 385 (S.D.N.Y. 2012). Roland appealed on April 13, 2012. (*Smith*, Dkt. No. 50.) On July 31, 2012, he submitted a request pursuant to the Freedom of Information Act for records relating to the incident. (Dkt. No. 17.) The documents he received in response included the names of some of

the officers involved, as well as some who were not involved, and did not include the investigation memoranda.

Equipped with this new information, Roland initiated this action *pro se* on August 16, 2012, naming as defendants Smith, Walsh, Sawyer, "McMayle," and COs Taft, Saul, Weir, Barkley, "Beny," and "Linterman."  (Dkt. No. 2.)  On October 18, 2012, the Court dismissed the claims against Sawyer and issued a *Valentin* order as to the officers.  (Dkt. No. 6.)  By letter dated November 9, 2012, the AG's office—through the Deputy Bureau Chief of the New York Litigation Bureau—informed the Court that it had received the *Valentin* order on November 5 and learned about the DOCCS investigation and its determination that Roland's claims were unsubstantiated.  (Dkt. No. 13.)

On December 10, 2012, Magistrate Judge Fox granted Roland's motion to seek pro bono counsel.  (Dkt. No. 23.)  Service was effected on Saul and Weir in early February 2013, but was returned unexecuted as to the remaining defendants.  (Dkt. Nos. 29-35.)  Counsel commenced representation of Roland on March 25, 2013, and subsequently negotiated an agreement with the AG's office to withdraw the appeal in *Smith* and limit the claims in this action to the five officers involved in exchange for the AG's promise not to assert a res judicata defense.  (Dkt No. 41; Dkt. No. 84 ("Schachter Decl.") ¶ 7, Ex. E.)  On May 3, 2013, the Court granted Roland's request to extend the time to effect service upon the remaining defendants until August 23, 2013.  (Dkt. No. 49.)  On May 29, 2013, Saul answered and Weir moved to dismiss for failure to state a claim.  (Dkt. Nos. 51 & 52.)  Roland, now counseled, filed an amended complaint on July 18, 2013, which attempted to cure the purported defects and removed certain defendants in accordance with his agreement with the AG.  (Dkt. No. 58.)  All defendants answered in July 2013.  (Dkts. No. 62 & 63.)

The parties conferred through counsel on September 27, 2013 and exchanged initial disclosures shortly thereafter. Defendants' initial disclosures identified ten individuals or groups of individuals likely to have discoverable information, including the five named defendants, Roland's current primary physicians, medical staff who treated Roland for his injuries, the individuals listed in Roland's disclosures, and Horos and McCooey. (Dkt. No. 82 ("Lee Decl."), Ex. A at 2.) The disclosures did not indicate the subject matter of the discoverable information for each individual or group as required under Rule 26. An initial pretrial conference was held before Judge Fox on October 24, 2013, and a scheduling order was issued the next day. (Dkt. Nos. 67 & 68.) Pursuant to the order, the last day to amend the pleadings was November 25, 2013 and discovery was to be completed by April 24, 2014. (Dkt. No. 68.) Roland served interrogatories and first requests for production on Defendants on November 27, 2013. In response to the first interrogatory—"Identify all persons known to you who have knowledge of any facts or circumstances relevant to the incident"—none of the Defendants identified Horos or McCooey. (Lee Decl., Ex. B at 4.)

Defendants made their first production on December 24, 2013, which consisted of approximately two thousand hand-written or otherwise illegible medical documents. A second production was made on January 15, 2014, consisting of similarly illegible time sheets. On February 25, 2014, the AG's office—through Julia Lee of the Department of Law Litigation—contacted Roland's counsel to ask whether they had reviewed the second production, which showed that Weir and Barkley were not at Sullivan on September 20, 2009. Roland's counsel consequently postponed depositions of Weir and Barkley until they completed their review of all documents. A third production of approximately 180 pages was made on February 27, 2014, which included the investigation memoranda and thus clearly identified Horos and McCooey. After reviewing this production in early March, Roland sought consent from Defendants to

4

amend his complaint, which was refused. He filed the instant motion on March 26, 2014. (Dkt. No. 79.)

**II.     Legal Standards**

A party may amend a pleading once as a matter of course within 21 days of service of either a responsive pleading or certain specified motions. Fed. R. Civ. P. 15(a)(1). Otherwise, amendment is permitted only upon consent of the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). Absent undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility, "the leave sought should . . . be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)(2)). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). "Prejudice arises when the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d. Cir. 1993)).

Where a scheduling order governs amendments to the complaint, Rule 15's more lenient standard is balanced against Rule 16's requirement that the order "shall not be modified except upon a showing of good cause." *Gullo v. City of N.Y.*, 540 Fed. App'x 45, 46 (2d Cir. 2013). "A finding of good cause depends on the diligence of the moving party" in attempting to comply with the order. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). Even if the movant acted diligently, the court may deny the motion based upon other factors such as prejudice to the opposing party. *See, e.g.*, *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

### III. Discussion

#### A. Rule 15

Roland seeks leave to amend the complaint to substitute Defendants Weir and Barkley with Horos and McCooey. Defendants argue that amendment would be futile because the claims are time-barred by the statute of limitations. *See, e.g.*, *Smith v. Westchester Cnty. Dep't of Corrections*, No. 07 Civ. 1803 (SAS), 2012 WL 527222, *4 (S.D.N.Y. Feb. 15, 2012) (citation omitted). Roland's claims accrued on the date of the incident, September 20, 2009, and are subject to a three-year statute of limitations. *E.g.*, *Byrd v. Abate*, 964 F. Supp. 140, 143-44 (S.D.N.Y. 1997) (citations omitted). Accordingly, the limitations period expired on September 20, 2012, and Roland's March 26, 2014 claims are time-barred unless the amendment "relates back" to the date of the original complaint. Since the amendment seeks to substitute new defendants, it will relate back only if (i) the claims arise out of the same occurrence set out in the original complaint and (ii) within the period allotted for effecting service, Horos and McCooey "received such notice of the action that [they] will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper part[ies'] identit[ies]." Fed. R. Civ. P. 15(c)(1)(C).

It is undisputed that the claims arise out of the same occurrence. The only question is whether by August 23, 2013—the deadline for effecting service—Horos and McCooey received adequate notice of the action such that they will not be prejudiced, and knew or should have known that they would have been sued but for a mistake as to their identity. Roland asserts that they received constructive notice through their attorney, the AG. The doctrine of constructive notice provides that "[n]otice of a lawsuit can be imputed to a new defendant state official through his attorney, when the attorney also represented the officials originally sued," provided that the plaintiff demonstrates "that the attorney knew or should have known that the additional

6

defendant would be added to the existing suit." *Byrd*, 964 F. Supp. at 146 (citations omitted). Defendants contest both points.

As to the first, Defendants argue that the AG did not represent the Doe officials in *Smith* and therefore did not represent Horos and McCooey. Yet the AG—through Ms. Lee—was specifically listed as counsel of record for each defendant in *Smith*, including the Doe officials. (*Smith*, Dkt.) The AG was also listed—through Mathew Grieco—as counsel for "All Defendants-Appellees" on appeal. (Schachter Decl., Ex. D.) Moreover, the AG implicitly represented all potential defendants arising out of the September 20, 2009 incident when he negotiated the agreement with Roland. The AG now represents all Defendants in this case, through Ms. Lee and Assistant Inna Ringh. (Dkt. No. 66.) Accordingly, Horos and McCooey— as Doe officers—were represented by the same counsel as Weir and Barkley.[2]

As to the second point, Defendants contend that Roland has not met his burden of demonstrating that the AG knew or should have known that Horos and McCooey would have been added to this action but for a mistake about their identities, or that the office received sufficient notice that it would not be prejudiced in defending them on the merits. Roland has shown, however, that the AG's office knew about DOCCS's investigation and conclusion as early as November 9, 2012. It would be reasonable to infer that the AG also reviewed the investigation files—including the officers' memoranda—and thus knew the identities of the officers involved. But it is not even necessary to make this inference: in support of its motion to dismiss in *Smith*, the AG offered the declaration of Theresa Hyatt, the inmate grievance

---

[2] The fact that there are two separate lawsuits—*Smith* and the instant action—does not preclude constructive notice where the suits arise out of the same occurrence, provided the defendants in the cases shared the same counsel and "counsel knew or should have known that the defendants in each group would be named as co-defendants in the other action." *Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989).

supervisor at Sullivan, which referenced and annexed as exhibits Grievance Nos. 18884-09 and 18998-09. These, in turn, included the investigation memoranda and clearly identified Horos and McCooey as the other two officers involved. (Schachter Decl., Exs. B & C.) It strains credulity for the AG's office to now claim that it had no idea about these same documents or the information contained therein.[3]

But even if the AG's office did not know, it should have known. Roland's allegations adequately described the officers whom he intended to sue, even if he was mistaken as to their names, and placed the AG's office on notice that it needed to investigate the relevant records to determine those officers' identities and prepare a defense. If the AG's office failed to conduct a

---

[3] Since Defendants do not dispute that Roland made a "mistake" concerning Horos's and McCooey's identities within the meaning of Rule 15, the Court considers any argument on that basis waived. In any event, this case does not fall under the rule of *Barrow v. Wethersfield Police Dep't* that the failure to identify Doe defendants in a timely manner is not a "mistake" about their identities. 66 F.3d 466 (2d Cir. 1995). Unlike the plaintiff in *Barrow*, Roland did not disobey repeated court orders to identify defendants; he reasonably believed that Defendants were forthcoming with evidence regarding the identities of the officers; and he actually and mistakenly identified the officers as Weir and Barkley, rather than simply relying upon Doe placeholders. *See, e.g.*, *Archibald v. City of Hartford*, 274 F.R.D. 371, 379-82 (D. Conn. 2011) (distinguishing *Barrow* because the plaintiff made diligent attempts to learn the identities of defendants and defendants' counsel's responses were unsatisfactory); *Thomas v. Arevalo*, No. 95 Civ. 4704, 1998 WL 427623, *15-16 (S.D.N.Y. July 28, 1998) (Sotomayor, J.) (distinguishing *Barrow* because the plaintiff made efforts to obtain the identities of the Doe officers, "he did not have access to information which would have identified [them]," and his failure to name the proper defendant was not a matter of strategic choice); *Byrd*, 964 F. Supp. at 145 (distinguishing *Barrow* because "it was the defense, rather than the plaintiff, who failed to identify the individual defendant despite Byrd's requests for that information . . . [which was] uniquely within the knowledge of Corporation Counsel"). Moreover, to the extent that *Barrow* defines "mistake" in terms of what the plaintiff—rather than the prospective defendant—knew or should have known, it has been abrogated by *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010). Compare *Barrow*, 66 F.3d at at 469-70 (holding that when a complainant sues Doe officers because he does not know their identities, it is not based upon a "mistake" about their identity and therefore a subsequent amendment naming the officers does not relate back), *with Krupski*, 560 U.S. at 541 ("We hold that relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading."). *Cf. Archibald*, 274 F.R.D. at 379-80 (distinguishing *Barrow*, post-*Krupski*, because the prospective defendants had constructive notice and were not prejudiced); *Byrd*, 964 F. Supp. at 145 (same distinction, pre-*Krupski*).

proper investigation, it must accept the consequences of its inaction; it cannot now assert ignorance as a basis for opposing the motion to amend. *See Archibald v. City of Hartford*, 274 F.R.D. 371, 380 (D. Conn. 2011) (finding constructive notice where the complaint contained "considerable detail regarding the roles of John Doe 1 and Jane Doe 1," "counsel knew of the roles of the 'Doe' defendants, and knew that the officers who were on duty at the times and places identified in the Complaint would be named as defendants in the suit," and defendants' "identities were 'uniquely accessible to [Defendants' counsel],' who could have (and should have) consulted police department records and interviewed officers and other police department employees") (citing *Byrd*, 964 F. Supp. at 146-47). *Cf. Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 555 (2010) ("Costa Crociere should have known . . . that it was not named as a defendant in that complaint only because of Krupski's misunderstanding about which 'Costa' entity was in charge of the ship—clearly a 'mistake concerning the proper party's identity.'"); *Samuels v. Dalsheim*, No. 81 Civ. 7050 (PKL), 1995 WL 1081308, *14 (S.D.N.Y. Aug. 22, 1995) ("It is sufficient for the purpose of constructive notice that . . . defendants' counsel knew or should have known that a particular category of defendants would be added to the action, without necessarily knowing the actual identity of each defendant to be added.") (citations omitted). "[R]epose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Krupski*, 560 U.S. at 550.

Defendants suggest that Horos and McCooey will be highly prejudiced if they are substituted as defendants because their defenses will differ substantially from the defenses of Weir and Barkley, who were not present during the incident. But McMonagle, Saul, and Taft undisputedly were present, and Roland alleges that all five officers acted in concert to deprive him of his rights in essentially the same manner. Presumably, therefore, the AG's office can

9

present largely the same defenses for Horos and McCooey that it intends to offer for the other three officers. To the extent that those defenses may differ, however, the AG has not suggested how and therefore has not demonstrated how it would prejudiced. Finally, the procedural posture of this case supports amendment. The fact that there was no motion for summary judgment pending and discovery was ongoing when Roland moved to amend mitigates concerns over prejudice. *E.g.*, *Estate of Radcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272 (JFK), 2007 WL 3084977, *4 (S.D.N.Y. Oct. 19, 2007) (citations omitted). And although discovery ended shortly after Roland filed his motion, reopening it for the limited purpose of deposing Horos and McCooey is unlikely to significantly delay resolution of this case or require Defendants to expend substantial additional resources. *See, e.g.*, *Soroof*, 283 F.R.D. at 153 ("[A]ny new discovery is not likely to be burdensome, as no new theory of recovery is added—instead, the operative facts at the foundation of the case remain the same.") (citation omitted).

### B.     Rule 16

Roland has also demonstrated good cause for failing to comply with the Scheduling Order.[4] The determination of good cause primarily turns upon whether Roland acted diligently in attempting to comply with the order. Since he seeks to amend the complaint to substitute Horos and McCooey for Weir and Barkley, the question is what he knew or should have known about these officers' involvement in the incident—or lack thereof—prior to the amendment deadline. Defendants identify three "red flags" which purportedly placed Roland on notice that he had sued the wrong officers and show that he was not diligent in pursuing his claims.

---

[4] Although the Court holds that Roland has shown good cause, it notes that he may be entitled to amend his complaint even if he had not. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (Sotomayor, J.) ("[D]espite the lenient standard of Rule 15(a), a district court *does not abuse its discretion* in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.") (emphasis added).

The first was Weir's May 2013 motion to dismiss, which alleged that Weir "was not personally involved in any constitutional violation." (Dkt. No. 52; Dkt. No. 53 at 1.) Notwithstanding this general statement, however, the substance of the motion was that Roland—in his *pro se* complaint—had not specifically alleged that Weir was involved in the incident. (Dkt. No. 53 at 5-6.) The motion was therefore ambiguous as to whether Weir denied being present, or simply sought dismissal based upon a pleading defect.

In July, Roland filed an amended complaint through counsel which sought to cure these defects by including specific allegations against Weir. (Dkt. No. 58.) This led to the second purported red flag, Weir's answer, which unequivocally "denie[d] that [Weir] was present during the incidents." (Dkt. No. 62 ¶ 8.) This, of course, would cause reasonable counsel to inquire into whether they had identified the wrong defendant, and Roland's counsel did just that.[5] But when counsel contacted the AG's office, they were told that the denial was based upon a misstatement of the date of the incident in the complaint—as September 20, 2012 rather than 2009—and that amending the complaint a second time would not be necessary because the parties "could just conform the pleadings to the proof." (Schachter Decl. ¶ 9.) In other words, the AG's office represented that substituting the proper party, once his or her identity became known, would not be prejudicial and, presumably, would not be opposed. *Cf. Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977) ("In a motion . . . to amend the complaint to conform to the proof, the most important question is . . . whether the defendant would be prejudiced by the implied amendment . . . .").

Defendants now oppose the very substitution they apparently agreed to, arguing that Roland did not act diligently and that Horos and McCooey would be prejudiced if they were

---

[5] Although Defendants oppose amendment as to both Weir and Barkley, Roland had no basis at this time to believe that Barkley was not properly named as a defendant.

11

named as defendants.  Yet even though Roland's counsel had reason to believe that Weir was not involved, they had no basis for knowing whom to substitute in his place as discovery had not yet taken place.  *See Soroof*, 283 F.R.D. at 149 (finding good cause existed where plaintiff did not possess sufficient facts prior to the amendment deadline to add a defendant to the complaint). Moreover, the pre-existing agreement with the AG was premised upon the notion that Roland would withdraw his appeal in *Smith* and his claims against other defendants provided that this action would be the forum for Roland to litigate his claims against the five officers actually involved in the incident.  It was entirely reasonable for Roland's counsel to believe—as they did—that the AG was assisting in identifying those officers and neither knew, nor possessed information that would enable it to know, that Horos and McCooey were actually involved.

     The final potential red flags were the investigation memoranda, which clearly identified Horos and McCooey.  Defendants assert that these were included in the initial December 24, 2013 production and argue that Roland's counsel should have reviewed them before March 2014.  The question, however, is whether counsel acted diligently to comply with the Scheduling Order.  Because the first production was not made until one month after the deadline for amendments—November 25, 2013—Roland would have missed the deadline regardless.  It is true that Roland's counsel would have acted with greater diligence had they reviewed the productions in December, January, or February.  But as already noted, it was reasonable for counsel to believe that they had identified the right defendants in light of the procedural history of this case and *Smith*.  It was also reasonable to assume, based upon Defendants' incomplete initial disclosures and interrogatories, that Weir and Barkley were involved, notwithstanding Weir's denial.  When counsel finally did discover Horos's and McCooey's potential involvement, they acted quickly: within a period of approximately two weeks, they spoke with their client, raised the issue during depositions of McMonagle and Taft, and, satisfied that they

had indeed named the wrong defendants, requested leave to amend from the AG and ultimately the Court. (Dkt. No. 75.) The Court is therefore satisfied that Roland has acted diligently to comply with its deadlines. To the extent that Defendants assert that prejudice precludes a finding of good cause, that argument has been addressed and rejected in the Rule 15 analysis. Accordingly, Roland has demonstrated good cause under Rule 16.

## IV. Conclusion

For the foregoing reasons, Roland's motion for leave to file an amended complaint is hereby GRANTED. The Second Amended Complaint attached to Roland's motion is deemed filed. Defendants' answer to the Second Amended Complaint shall be filed within 14 days. Discovery is hereby reopened for a period of 45 days for the purposes of discovery relating to the two new defendants.

The Clerk of Court is directed to close the motion at docket number 79.

SO ORDERED.

Dated: June 24, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

13