```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
  THOMAS M. ROLAND III,                       :
                                              :
                            Plaintiff,        :
                                              :
               -v-                            :    12-CV-6331 (JPO)
                                              :
  DANIEL McMONAGLE, JUSTIN TAFT,              :    OPINION AND ORDER
  JED SAUL, JOSEPH HOROS,                     :
  and MICHAEL McCOOEY,                        :
                                              :
                            Defendants.       :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

      Thomas M. Roland III brings this action pursuant to 42 U.S.C. § 1983 alleging that he was forcibly medicated and physically assaulted in violation of his First, Eighth, and Fourteenth Amendment rights. Daniel McMonagle, Justin Taft, Jed Saul, Joseph Horos, and Michael McCooey (collectively "Defendants") move for partial summary judgment on Roland's First and Fourteenth Amendment claims. (Dkt. No. 99.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I.    Background**

      Roland is currently incarcerated at Wende Correctional Facility in Alden, New York. (Dkt. No. 79-A at ¶ 2.) This case arises out of events that occurred when Roland was imprisoned at Sullivan Correctional Facility ("Sullivan") in Fallsburg, New York. (*Id.* at ¶ 3.) Roland alleges that Defendants coerced him to take a sedative and then physically attacked him in retaliation for grievances he filed against Sullivan staff.

    **A.    Roland's History of Grievances**

      Roland filed a number of grievances at Sullivan. (Dkt. No. 117-2, Roland Dep. 189:8-11.) He submitted two complaints in the summer of 2009, approximately eight weeks before the

1

alleged beating. On July 27, 2009, Roland reported that an unnamed Correctional Officer ("CO") threatened to kill him. (Dkt. No. 110-3 at 1.) The next day, Roland filed another grievance describing threats against his life. (*Id.* at 2.) The second grievance named "C.O. Craiter," an individual Roland now identifies as Sergeant W. Carter. (*Id.* at 2; Dkt. No. 109, Pl.'s Opp'n Summ. J. at 1.)

Sergeant Carter and another officer, Sergeant T. Aceto, investigated Roland's grievances. (Dkt. No. 110-3 at 3-4.) Sergeant Carter concluded that he was "unable to make any sense of [Roland's] written complaint." (*Id.* at 3.) Sergeant Aceto reported that Roland no longer had "any issues or problems." (*Id.* at 4.) On August 10, 2009, the State Commission of Correction wrote a letter to Sullivan's Superintendent to highlight the "seriousness" of Roland's allegations against Sullivan staff. (*Id.* at 5.)

The parties dispute whether Defendants were aware of Roland's grievances. (Dkt. No. 101, Defs.' Mot. Summ. J. at 11; Dkt. No. 109 at 2.) Roland had not filed a grievance against any of the Defendants prior to the alleged beating and one of his complaints against a Sullivan employee was never processed. (Dkt. No. 100, Defs.' R56.1 Stmt. at ¶¶ 19-20; Dkt. No. 111, Pl's R.56.1 Stmt. at ¶¶ 19-20.) However, one of the Defendants, Sergeant Daniel McMonagle, lived with the two officers involved in Roland's July 2009 complaints. (Dkt. No. 117-1, McMonagle Dep. 68:24-77:11.) Roland contends that Sergeant McMonagle "orchestrate[d] [an] attack" on him in retaliation for his grievances against Sullivan employees. (Dkt. No. 109 at 2.)

### B.     Alleged Forced Medication and Assault

At approximately 6:45 p.m. on September 20, 2009, Sergeant McMonagle and COs Jed Saul and Justin Taft escorted Roland from his cell to a disciplinary hearing room for urinalysis testing. (Dkt. No. 100 at ¶ 6; Dkt. No. 111 at ¶ 6.) Shortly thereafter, Nurse Diane Stefanuk entered the hearing room and offered Roland a psychotropic medication. (Dkt. No. 105,

2

Stefanuk Decl. at ¶ 4.)  The medication, Vistaril, was a sedative that nurses give to prisoners "as needed . . . for anxiety or agitation."  (Dkt. No. 110-1, Stefanuk Dep. 49:10-17; Dkt. No. 109 at 4.)  The parties agree that Roland initially refused the medication and ultimately ingested it.  (Dkt. No. 117-2 at 67:18-24; Dkt. No. 100 at ¶ 9.)  They contest whether Defendants medicated Roland by force.

Defendants claim that Roland "hesitated at first but then accepted the . . . medication without incident."  (*Id.*)  Roland reports that the officers "surrounded [him] and said [he] had to take th[e] medication."  (Dkt. No. 117-2 at 68:2-13.)  Roland concedes that the officers did not touch him, but asserts that they intimidated—and thus forced—him into swallowing the pill.  (Dkt. No. 117-2 at 67:22-68:13; Dkt. No. 109 at 5.)  Nurse Stefanuk reports that she did not administer medication over Roland's objection, and that if she had, she would have documented it.  (Dkt. No. 105 at ¶¶ 5-7).  She states that Roland ingested the sedative voluntarily.  (*Id.*)

After Roland took the medication, Nurse Stefanuk and another medical provider decided to transfer him to the Residential Crisis Treatment Program ("RCTP"), a section of the prison's Mental Health Unit.  (Dkt. No. 105 at ¶ 2.)  Nurse Stefanuk's progress notes indicate that she initiated the transfer "due to paranoia, assaultive behavior, and for patient safety."  (Dkt. No. 110-1 at 53:6-11.)  At a later deposition, Nurse Stefanuk was "not sure" why she made this assessment of Roland's behavior.  *Id.*  Progress notes from several hours earlier describe Roland as "quiet and calm."  (*Id.* at 48:4-5.)

Three of the Defendants—Sergeant McMonagle and COs Taft and Saul—escorted Roland to the RCTP.  (Dkt. No. 117-1 at 113:12-13; Dkt No. 117-8, Taft Dep. 99:4-18; Dkt. No. 117-7, Saul Dep. 39:3-23.)  Two additional officers, Joseph Horos and Michael McCooey, joined the other Defendants during the transfer.  (Dkt. No. 117-4, McCooey Dep. 18:3-20:21; Dkt. 117-

5.) Together, the Defendants took Roland to a cell that was unmonitored by cameras. (Dkt. No. 117-4 at 76:4-5; Dkt No. 117-8 at 99:13-18.)

The parties offer conflicting descriptions of events inside the RCTP cell. Roland claims that, once he was in the cell, the five officers began to physically assault him. (Dkt. No. 106-B, Roland Dep. 82:21-85:7.) He contends that the COs punched him in the face, kicked him, taunted him with racial slurs, and told him to "crawl up under the bed" to escape the beating. (*Id.*) Roland also testifies that, during the attack, one of the COs said to him, "[O]h you like filing grievance[s]." (*Id.* at 85:9-10.) Defendants claim that Roland went into the cell without incident, but they offer varied testimony on their route through the prison and whether any officers entered the RCTP cell. (Dkt. No. 117-7 at 39:18-23; Dkt No. 117-8 at 99:4-103:22.)

It is undisputed that Roland suffered injuries on September 20, 2009. Medical records from that day state that Roland was "found . . . on [the] floor unresponsive" by medical staff. (Dkt. No. 117-9 at 1.) Records from the next day list Roland's injuries as a swollen eye and a "subcong hematoma cornea," a term that likely describes a broken blood vessel. (*Id.* at 2.) Sergeant McMonagle contends that Roland injured himself by "banging his head on the walls and door, and punching the walls and door" of his cell. (Dkt. No. 117-5.) Defendants also assert that Roland "received injuries in [a] fight" with another prisoner the day before the alleged attack. (Dkt. No. 101 at 2; Dkt. No. 117-5.) Roland concedes that he had an altercation with another prisoner on September 19, 2009, but states that he suffered only "very minor" injuries during that incident. (Dkt. No. 106-B at 40:8-41:25; Dkt. No. 109 at 2.) He claims that Defendants caused the injuries documented in his medical records.

Roland was transferred out of Sullivan on September 22, 2009, two days after the alleged attack. (Dkt. No. 117-9 at 2.) After exhausting his administrative remedies, he filed this suit.

**II.      Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The initial burden on summary judgment rests with the movant, who must provide evidence illustrating his entitlement to relief on each element of his claim or defense. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant makes this showing, the burden shifts to the non-moving party to identify specific facts demonstrating a genuine issue for trial. Fed. R. Civ. R. 56; *Anderson*, 477 U.S. at 250-51. To meet its burden, the non-moving party must "go beyond the pleadings," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and may not rely on mere "conclusory statements, conjecture, or speculation," *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587). The court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). "It is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (citation omitted).

### III. Discussion

Defendants argue that Roland has failed to establish triable issues of fact on his due process and retaliation claims.[1]  Defendants also contend that they are entitled to qualified immunity.

#### A. Due Process

The Fourteenth Amendment limits when prisoners may be forcibly medicated. Under the Due Process Clause, all prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs . . . ." *Washington v. Harper*, 494 U.S. 210, 221 (1990). Forcing such drugs on a prisoner is unconstitutional "absent a finding of overriding justification and a determination of medical appropriateness" by a medical professional. *Riggins v. Nevada*, 504 U.S. 127, 135 (1992); *see Harper*, 494 U.S. at 231.

Defendants do not dispute that Roland had a liberty interest in avoiding forced medication.[2]  (Dkt. No. 99 at 5-6.)  Instead, they offer three arguments for why no due process violation occurred. (*Id.* at 2.)  First, Defendants contend that Roland voluntarily ingested the medication. (*Id.*)  Second, they argue that Defendants cannot be liable because Nurse Stefanuk, rather than an officer, actually administered the Vistaril. (*Id.*)  Defendants' third argument is that, even if they forcibly medicated Roland, they acted in reasonable reliance on the judgment of a medical professional. (*Id.*)

---

[1] Defendants have not moved for summary judgment on Roland's Eighth Amendment claim. This Court has jurisdiction over the instant motion pursuant to 28 U.S.C. § 1331.

[2] Defendants refer to Vistaril as a "psychotropic medication" and stipulate that forced administration of Vistaril requires a documented finding of medical necessity. (Dkt. No. 101 at 6; Dkt. No. 100 at ¶ 16.)  Defendants do not argue that *Harper* and *Riggins* are inapplicable.

To support their first argument, Defendants emphasize that none of the officers touched Roland when he was in the hearing room. (*Id.* at 8.) While this fact is uncontested, physical contact is not required for a due process violation. *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960) ("Since *Chambers v. State of Florida*, this Court has recognized that coercion can be mental as well as physical . . . . A number of cases have demonstrated, if demonstration were needed, that the efficiency of the rack and the thumbscrew can be matched . . . by more sophisticated modes of 'persuasion.'") (citations omitted). The Fourteenth Amendment prohibits prison officers from using the threat of violence to compel an inmate to ingest a drug, particularly where no medical professional has authorized forced medication.[3] Roland claims that Sergeant McMonagle, CO Taft, and CO Saul made such threats; Defendants aver that they did not. Thus, there remains a genuine dispute about whether the Defendants intimidated Roland into taking Vistaril. The resolution of that dispute falls to the trier of fact.

Defendants' second argument also fails. In their motion for summary judgment, Defendants appear to argue that a prison official cannot violate due process when a nurse, rather than a CO, "offer[s] and administer[s]" a pill. (Dkt. No. 101 at 6.) It is true that a defendant must proximately cause a plaintiff's injuries to be liable under § 1983. *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) ("[A]s in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). However, defendants in § 1983 suits "are responsible for the natural 'consequences of their actions, including consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." *Richardson v. Pratcher*, 48 F. Supp. 3d 651, 671 (S.D.N.Y. 2014) (quoting *Kerman v. City of New York*, 374 F.3d 93, 126 (2d Cir. 2004)). "[A] reasonably foreseeable independent

---

[3] It is not necessary to address, nor does the Court decide, what modes of force are permissible upon a finding of medical necessity.

decision that harms the victim does not break the chain of causation." *Id.* at 671 (citing *Zahrey v. Coffey*, 221 F.3d 342, 351-54 (2d Cir. 2000)). The fact that Nurse Stefanuk gave Roland the pill does not preclude Defendants' liability as a matter of law. Viewed in the light most favorable to the Plaintiff, the evidence permits a finding that Defendants' conduct proximately caused Roland to ingest a drug against his will. Summary judgment is inappropriate in such circumstances.

Defendants' final argument is that any force used was reasonable because the officers, as "non-medical security officials," could "rely on . . . the medical judgment of the mental health nurse if she found it medically necessary to medicate [Roland]." (Dkt. No. 101 at 7). Defendants may be entitled to rely on Nurse Stefanuk's judgment, but they stipulate that she made no medical necessity determination in this case. (*See* Dkt. No. 100 ¶¶ 16-17 (stating that Nurse Stefanuk did not authorize medication over Roland's objection.)) Defendants' third argument is irrelevant given the uncontested facts.

The five Defendants in this action move for summary judgment together. However, only three of those Defendants—McMonagle, Taft, and Saul—were present when Roland ingested Vistaril. The parties agree that officers Horos and McCooey joined the other Defendants during Roland's transfer to the RCTP. Because Horos and McCooey were not in the hearing room, there is no genuine dispute about whether they forced Roland to take medication against his will. Accordingly, while summary judgment on Roland's due process claim is unwarranted as to Defendants McMonagle, Saul, and Taft, it is appropriate as to Defendants Horos and McCooey. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation omitted).

B.      Retaliation

To prevail on a retaliation claim, a prisoner must show "first, that the plaintiff engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 585 (S.D.N.Y. 2006) (citing *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Defendants concede that "an inmate's grievance can be protected conduct" and that the use of force "can constitute a retaliatory adverse action." (Dkt. No. 101 at 9.) The question is whether Roland can connect his grievances to the alleged attack.

Defendants claim that there are "no convincing indicia" that the incident on September 20, 2009 was retaliatory. (*Id.* at 10.) They note that Roland had not filed a grievance against any of the Defendants prior to that date. (*Id.* at 11.) Accordingly, Defendants argue, none of the officers named in this suit would have had reason to retaliate against Roland, nor would they have known about complaints involving other prison employees. (*Id.*) Defendants also cite the two-month period between Roland's grievances and the alleged beating to counter Roland's retaliation claim. (*Id.*)

As a general matter, "it is difficult to establish one defendant's retaliation for complaints against [a third party]." *Hare v. Hayden*, No. 09-cv-3135 (RWS), 2011 WL 1453789, at *4 (S.D.N.Y. 2011) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)). *But see Espinal*, 558 F. Supp. 3d at 130 (making the "legitimate inference" that one officer could have retaliated on behalf of another). However, summary judgment is unwarranted if the evidence can support an inference of causation. Under Second Circuit precedent, plaintiffs alleging retaliation may rely on circumstantial evidence to establish a causal link between protected activity and adverse action. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). A good disciplinary record in

9

prison, vindication at a disciplinary hearing, "temporal proximity" between protected conduct and alleged retaliation, or "statements by the defendant concerning his motivation" can all be invoked to withstand a motion for summary judgment. *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (citing *Colon*, 58 F.3d at 872-73).

Roland has presented circumstantial evidence of retaliation. He has offered proof of his grievances and a letter of concern from the State Commission of Correction from two months before the alleged beating. Defendants argue that the gap between Roland's grievances and the alleged retaliation is too long to permit an inference of causation. However, while the Second Circuit "has not drawn a bright line to define the outer limits" of temporal proximity in retaliation cases, courts have found support for causation in cases involving longer periods than the two months at issue here. *Gorman-Bakos v. Cornell Co-op Ext. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Espinal*, 558 F.3d at 129 ("[T]he passage of only six months between the dismissal of [plaintiff's] lawsuit and an allegedly retaliatory beating . . . is sufficient to support an inference of a causal connection."). The time between Roland's grievances and the alleged attack does not bar his claim, and is consistent with a permissible inference of causation.

Moreover, the Court need not look to temporal proximity alone. Roland has presented evidence that one of the Defendants lived with the officers involved in his July 2009 grievances. Viewed in the light most favorable to the Plaintiff, this evidence supports Roland's claim that Defendants were aware of his history of complaints. Finally, and most significantly, Roland testified that a Defendant mocked him for filing grievances during the alleged attack. The credibility of Roland's testimony, like that of the Defendants, is a question for the factfinder. At this stage, Roland has raised a genuine and material question as to whether Defendants retaliated against him for constitutionally protected conduct.

### C. Qualified Immunity

The doctrine of qualified immunity protects prison officials from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To resolve qualified immunity claims, courts first consider whether the plaintiff has "shown facts making out violation of a constitutional right." *Id.* at 154. Courts then assess whether the right at issue was "clearly established," and even if it was, whether it was "objectively reasonable" for the official to believe his conduct was lawful. *Id.*

For the reasons outlined above, Roland has presented enough evidence to create a genuine dispute as to whether there was in fact a violation of his First and Fourteenth Amendment rights. The remaining question is whether those rights were clearly established on September 20, 2009. A right is clearly established when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In qualified immunity analysis, courts ask if the law was "defined with reasonable clarity" by a court with binding authority at the time of the incident in question. *Id.* at 161 (citing *Young v. Cty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)). Courts also consider whether a reasonable defendant would have known his conduct was unlawful. *Id.*

The right to avoid forced administration of antipsychotic drugs was clearly established at the time of the alleged attack. As of 2009, the Supreme Court had recognized a liberty interest in freedom from involuntary medication. *See Sell v. United States*, 539 U.S. 166, 178-79 (2003); *Riggins*, 504 U.S. at 134-35; *Harper*, 494 U.S. at 222. The Supreme Court had also held that medical professionals may authorize forced medication in certain circumstances. *Harper*, 494

11

U.S. at 227, 231 ("[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will . . . if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest.")  At the time of the alleged beating, these precedents were reflected in Sullivan policies prohibiting non-medical staff from authorizing medication and requiring documentation of any forced medication.  (*See* Dkt. No. 100 ¶¶ 13-16.)  No reasonable correctional official would have believed that it was lawful to force a prisoner to take medication by threatening physical violence.  The Defendants involved in the alleged forced medication are not entitled to qualified immunity on Roland's Fourteenth Amendment claims.

The right to submit grievances, and to be free from retaliation for doing so, was also clearly established in 2009.  *Colon*, 58 F.3d at 872 (2d Cir. 1995) ("Prisoners . . . have a constitutional right . . . to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.") (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)).  Defendants' sole argument for qualified immunity on Roland's First Amendment claim is that there is "no evidence that defendants . . . used excessive force against the plaintiff in retaliation for the multiple grievances he filed against [prison] employees."  (Dkt. No. 113 at 7).  This is a contested assertion of fact, not a basis for extending immunity.  On September 20, 2009, no reasonable official would have believed it lawful to physically assault an inmate for filing complaints against prison staff.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  With respect to Roland's due process claim, the motion is GRANTED as to Defendants Horos and McCooey, but DENIED as to Defendants McMonagle, Saul, and Taft.  With respect to Roland's retaliation claim, the motion is DENIED as to all five Defendants.

The Clerk of Court is directed to close the motion at Docket Number 99.

SO ORDERED.

Dated: October 9, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge